# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JUANITA MEDINA,

       Plaintiff,

vs.                                      Civil No. 99-1115 LH/WWD

KENNETH APFEL, Commissioner
of Social Security,

       Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed April 5, 2000 **[docket # 5]**.[1]  Ms. Medina first filed an application for SSI benefits in March 1995, alleging disability beginning March 1, 1995.  The Commissioner denied Plaintiff's application for benefits both initially and on reconsideration on October 12, 1995.  Plaintiff did not request a hearing before an Administrative Law Judge ("ALJ") on this denial.

    2.  Ms. Medina filed the current application for SSI benefits on February 11, 1997 alleging a disability which commenced June 1, 1994 (an earlier onset date than the previous application) due to stress, depression, anxiety, foot pain, joint pain and snapping tendons.  After conducting an administrative hearing, the ALJ denied the application, concluding that Plaintiff was

---

[1] The motion package was actually filed with the Court on June 26, 2000, although the motion was served on April 5, 2000.

not disabled because she could perform work that existed in significant numbers in the national economy.

3. The Appeals Council denied Ms. Medina's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g). Ms. Medina was 39 years old at the time of the ALJ's last decision. She has an eighth grade education and has worked in the past as a maid and maintenance painter.

4. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id.

5. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) the ALJ impermissibly denied reopening Plaintiff's case; (2) the ALJ inappropriately used the grids to determine that Plaintiff was not disabled; (3) the hypothetical posed to the vocational expert did not include all of Plaintiff's impairments; (4) the credibility determination was not based on substantial evidence; (5) the ALJ did not properly evaluate Ms. Medina's mental impairment; and (6) the ALJ's step five finding that Plaintiff could perform other work in the national economy was not based on substantial evidence.

6. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. § 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five

factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id.

      7.  Ms. Medina last worked in 1994.  Tr. at 31.  She claimed that chronic pain from her fibromyalgia kept her from working.  Tr. at 36, 59.  As part of a program started by the New Mexico Human Services Department ("HSD"), she was placed in a job as a motel maid, but worked there for only a short time, as she was unable to bend over to do the beds.  Tr. at 53. HSD then wanted Ms. Medina to babysit, but Plaintiff refused, stating that she told them she would "hurt a child" because she would "scream and holler" a lot, and that two mental health professionals, including her psychiatrist, Dr. Zembli, told her she was too nervous to babysit.  Tr. at 54; 302.

      8.  Ms. Medina alleges that she suffers from pain in her back, arms and legs and describes her feet pain as feeling like there are "poking things" in her heels when she walks.  Tr. at 56.  She has difficulty bending and squatting, walking up stairs and stiffness in her hands that at times causes them to "clamp up."  Tr. at 48-50.

      9.  Plaintiff suffers from sleeplessness and loss of appetite.  Tr. at 20, 53.  Plaintiff said that sometimes she doesn't sleep for days, and that it's been about 4 years since she's slept peacefully.  Tr. at 33, 37.  When asked by the ALJ, Plaintiff stated that she is able to sit for 15 minutes, stand for about a half-hour, walk two to three blocks, and lift a gallon of milk or 5 lbs of potatoes.  Tr. at 50, 51, 57.  She knows that she can no longer lift her grandson who weighs between 16 and 20 pounds.

10. Ms. Medina can dress herself and cares for her own hygiene, although she has someone else, usually her daughter, sometimes tie her shoes and do her eyes and hair. Tr. at 45-46. She stated that her daughter does the housework, including cooking, washing the dishes and clothes and vacuuming. Tr at 35, 43. Plaintiff cannot do any food shopping because she would become dizzy when she walked in the store and had to hang onto the shopping basket. Tr. at 55. Ms. Medina no longer drives, although she still has a driver's license. The last time she drove was to her counseling appointment, and she blacked out. Tr. at 40.

11. Plaintiff's day consists of sitting and watching television, and reading love stories. Tr. at 42. She visits and stays over at a boyfriend's house a couple of times a week. She does not go out with him in the evenings, but stays in and watches television. Tr. at 56. She told the ALJ that she does not go to movies or ball games because she cannot sit that long. Tr. at 42.

12. Plaintiff also alleges depression and anxiety as a mental impairment. At the hearing, she said she had a lot to be depressed about, especially the problems she was having with her two teenage boys, one of whom was at a reformatory and the other at a substance abuse treatment center. Tr. at 47, 58. Ms. Medina denied thoughts of suicide except for one time when she wondered "how would it be to fall down [a]s window," but also realized that she would never carry it through because she "love[s] life out there." Tr. at 58. She attends counseling sessions regularly, usually weekly. Tr. at 38.

**First Alleged Error**

13. Plaintiff first alleges that the ALJ impermissibly denied reopening Plaintiff's case. The Secretary's decision not to reopen a previously adjudicated claim for benefits is discretionary and, therefore, is not a final decision reviewable under §42 U.S.C. 405(g). Brown v. Sullivan,

912 F.2d 1194, 1196 (10th Cir. 1990); see also Califano v. Sanders, 430 U.S. 99, 107-08 (1977) (holding that 42 U.S.C. §405(g) could not "be read to authorize judicial review of alleged abuses of agency discretion in refusing to reopen claims for social security benefits").

14. No do I find a colorable constitutional claim which could make its way to review in this Court. See Dozier v. Bowen, 891 F.2d 769, 771 (10th Cir. 1989) (federal judicial review may exist when the Commissioner's denial of a petition to reopen is itself challenged on constitutional grounds). Plaintiff alleges she had no notice nor opportunity to present evidence of good cause why a reopening was appropriate, but offers no facts or details to support the allegations to describe how or why the notice was deficient or for that matter, whether any notice was received at all in any form. Further, the ALJ did review the record and still expressly declined not to reopen the application, instead finding that there was no reason under any existing regulation which would warrant reopening. Tr. at 14.

15. The fact that Plaintiff's subsequent application was filed within the regulatory two-year period, 20 C.F.R. § 416.1488, merely satisfies the threshold criteria for consideration by the ALJ, but does not mandate reopening. Therefore, the ALJ correctly excluded evidence under the principle of *res judicata* prior to October 12, 1995, when the reconsideration determination was made on the initial application.

**Second Alleged Error**[2]

16. Plaintiff alleges that the ALJ's credibility determination was not based on substantial evidence. The allegation is two-fold: that the credibility determination was not based on

---

[2] I consider the credibility determination next since findings on this issue have some impact on other areas.

substantial evidence because the ALJ erroneously stated there were no medical opinions limiting her capacity to perform exertional work, and because it overlooked Plaintiff's fibromyalgia as an impairment.

17.   The ALJ determined that Plaintiff's assertions that she was totally unable to work were not credible, finding that even Plaintiff's own assertions were consistent with the requirements of a light RFC with a sit/stand option.  Tr. at 17.  I find that the ALJ's determination was supported by the substantial evidence in the record.

18.   At the hearing, Ms. Medina testified that she could not work because of chronic pain from fibromyalgia, describing it as a "stabbing pain" that hurts "all through my back, all through my arms, my hands, my whole body usually hurts."  Tr. at 36.

19.   Defendant is correct in pointing out that the medical opinion relied on by Plaintiff in her argument on this issue is not helpful in establishing physical limitations on Ms. Medina's ability to work, Dr. Gonzalez' opinion speaks only to Ms. Medina's mental impairment and does not limit her physical or exertional capacity to do work.  Dr. Gonzales opined that at the time of May 1997, Ms. Medina was unable to work because of her depression and anxiety which affected her memory and social interaction, although he recommended that she be periodically re-evaluated.  Tr. at 304.

20.   The fact that the record contains no objective medical evidence relating to Plaintiff's impairment of fibromyalgia is not surprising, since there are no laboratory tests for the presence or severity of the condition.  Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996).[3]  However,

---

[3]  A specific diagnostic sign for fibromyalgia is the presence of multiple tender spots at certain fixed locations of the body.  Sarchet v. Chater, 78 F.3d at 306.  There is no dispute here regarding whether Ms. Medina suffers from this condition, but rather whether her symptoms are

evidence related to other factors cited by the ALJ, and which concerned her actual level of regular daily activity, belied Plaintiff's assertions of total inability to work.  See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir.1988) (ALJ may consider the claimant's activities in discounting subjective complaints).

21.  Plaintiff lives with her three teenage children.  Her testimony at the hearing was that they "didn't do very much of nothing [sic]" and that she was unable to do housework of any kind. Tr. at 43.  Yet the ALJ noted inconsistencies between her testimony and statements she had made to physicians and other treatment providers which indicate that she is able to maintain an activity level considerably above what she asserted at the hearing.

22.  Contrary to Plaintiff's portrayal of a typical day where she sits and watches television all day, the record shows that she is not as dependent on her daughter or other children as she asserted at the hearing.  Rather, most of the stress in her life seems to be a result of the fact that she is *not* able to get them to help, and winds up doing the work herself.  Tr. at 299, 361. Further, she cares full-time for her daughter's infant son while the daughter worked.  Tr. at 299. Again, as Defendant points out, Plaintiff feels continued frustration about the fact that her daughter spends little time being a mother, with the job falling to her instead.  Tr. at 252, 361, 364, 367.

23.  While Ms. Medina's family environment is unfortunate and undoubtedly stressful,[4] it does not necessarily render her unable to work as defined under the social security regulations.

---

totally disabling.

[4] Much of Plaintiff's stress is related to troubles with her two sons and substance abuse. See e.g., Tr. at 304, 347, 414.  There is also some indication that Plaintiff's abusive ex-spouse is also a source of anxiety.  Tr. at 354, 361, 434.

The inconsistencies noted by the ALJ are appropriate substantial evidence upon which to base a finding of noncredibility. Eggleston v. Bowen, 851 F.2d 1244, 1246-47 (10th Cir.1988) (finding of noncredibility can be based on claimant's inconsistent answers to some questions and fact that assertions were at odds with much of the medical evidence in the case).

24.   Plaintiff also contends that in conducting the credibility inquiry, the ALJ overlooked fibromyalgia as an impairment. Plaintiff suggests that the ALJ's analysis of the impairment was limited to a step two analysis and ignored a consideration of the impairment under the standard set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). While the ALJ did evaluate whether Plaintiff's fibromyalgia was a listed impairment as part of the step two analysis, Tr. at 16-17, he also evaluated the condition separately under a credibility analysis, Tr. at 17.

25.   The ALJ did not cite to Luna in his decision, but nevertheless referred to the relevant social security regulations and rules on credibility inquiries. I therefore find that his analysis was conducted according to the proper legal standard. The ALJ considered the medical opinions, Plaintiff's testimony along with other statements she had made to health care providers contained in the record regarding her daily activities as well as her symptoms. Tr. at 18. He concluded that Ms. Medina's assertions of a total inability to work were "inconsistent with her treatment record and activities of daily living." Id. I therefore find that the ALJ's credibility determination was based on substantial evidence from the record. Plaintiff contends that the ALJ did not consider all the evidence, Resp. at 8, but offers no specific references to the record to support this general allegation. Remand or reversal is not indicated on the issue of credibility.

**Third Alleged Error**

26. Plaintiff next alleges that the hypothetical posed to the vocational expert did not include all of Plaintiff's impairments. The ALJ found that Ms. Medina suffered from severe impairments, consisting of fibromyalgia, migraine headache, chronic depression, anxiety and pain disorder. Tr. at 15. The ALJ concluded that these impairments limited Plaintiff to light exertional work, subject to some postural limitations (sit/stand option) and also limited the type of work to simple, repetitive low-stress tasks. Tr. at 18.

27. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. §416.967(a) (1986). The full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday, with sitting occurring intermittently during the remaining time. SSR 83-10.

28. As indicated above, Plaintiff stated that she is able to sit for 15 minutes, stand for about a half-hour, walk two to three blocks, and lift a gallon of milk or 5 lbs of potatoes. The ALJ stated in his decision that these assertions were consistent with an ability to do light work with a sit/stand option. Tr. at 18. Plaintiff maintains that the record contains no factual basis for this finding regarding her RFC. I find that Plaintiff's contentions on this issue have merit.

29. Residual functional capacity ("RFC") is the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs. Davidson v. Sec'y of HHS, 912 F.2d 1246, 1253 (10th Cir. 1990); 20 C.F.R. Pt.404, Subpt.P, App.2 § 200.00(c). It is a measure of the individual's "maximum sustained work capability." Davidson, at 1253.

30. The initial hypothetical posed by the ALJ to the vocational expert ("VE") assumed an ability to do light work, included a sit/stand option and a requirement that the work be relatively low-stress and simple one and two-step processes. The ALJ based the light work assumption on the fact that no medical opinions limited Plaintiff's ability to work. Tr. at 18. However, the record is devoid of any medical opinions which could indicate whether Plaintiff can perform light work on a sustained, daily basis, for 6 hours out of an 8-hour day, even with a sit/stand option.

31. In this case, the absence of functional limitations acknowledged by physicians is more a function of the issue not being addressed at all rather than Plaintiff simply not having any limitations imposed. This step is critical here, because it seems that an ability to perform only sedentary work might warrant a finding of disability, given the VE's opinion that sedentary jobs would involve the stress of production. Tr. at 64; see also Gathright v.Shalala, 872 F.Supp. 893 (D.N.M. 1993) (ALJ erred in not asking doctor to make a complete RFC assessment where no physician who personally examined plaintiff did a full RFC assessment neither was there any determination by any physician about how long plaintiff can sit or stand, or how much weight plaintiff can carry; and where plaintiff complained of knee joint pain caused by bilateral osteoarthritis and that the pain medication did not help); 20 C.F.R. § 404.1513(b) & (c) (medical reports should include a medical assessment indicating ability to do work-related activities).

32. The medical evidence that is available, even that which was relied on by the ALJ, does not by itself support an ability to perform light work on a sustained basis. See, e.g., Tr. at 296 (noting Plaintiff was having "a lot of" back pain and muscle spasm); Tr. at 406. I note that the recommendation to start an exercise program by one of Plaintiff's doctors is insufficient as a medical opinion on Ms. Medina's RFC. See Tr. at 399. Neither is the ALJ's reliance on the lack

of objective medical findings, Tr. at 16, given the nature of fibromyalgia. Accordingly, the case should be remanded on this issue in order to determine Plaintiff's residual functional capacity.

33. Plaintiff also contends that the hypothetical was deficient in not considering her mental or nonexertional impairments. I find no merit to this contention. Hypothetical questions need only include limitations which are actually supported in the record and which are credible. See Jordan v. Heckler, 835 F.2d 1314, 1316 (10th Cir. 1987) (ALJ's failure to include complaints of pain in hypothetical was not inappropriate as there was not sufficient evidence that pain interfered with claimant's ability to work); see also Monier v. Apfel, F.Supp. 2d 1035 (E.D.Mo. 1998).

34. Given the ALJ's credibility determination and his findings on the severity of Plaintiff's mental impairments, see below, I find that the ALJ sufficiently acknowledged Plaintiff's nonexertional limitations by including a need for simple, relatively low-stress jobs.

35. Accordingly, this case should be remanded on the first part of Plaintiff's contention in order to obtain a medical consult or other medical evidence which will address Plaintiff's residual functional capacity.

**Fourth Alleged Error**

36. Plaintiff contends that the ALJ inappropriately used the Medical-Vocational Guidelines ("grids") to determine that Plaintiff was not disabled. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2). Thus, they are inapplicable when a claimant has a nonexertional impairment. See Frey v. Bowen, 816 F.2d 508 (10th Cir. 1987).

37.  Contrary to Plaintiff's assertion, the ALJ did not rely on the grids in concluding that Ms. Medina was not disabled.  Where, as here, a claimant's nonexertional limitations are significant enough to reduce further her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled.  Thompson v. Sullivan, 987 F.2d at 1487.  The grids only provide a shortcut in certain circumstances to determining whether a claimant can perform other work by obviating the need for a vocational expert's testimony.  Daniels v. Apfel, 154 F.3d 1129 (10th Cir. 1998) (citing Williams v. Bowen, 844 F.2d 748, 751 - 52 (10th Cir.1988)).

38.  The very fact that the ALJ called upon a VE at the hearing demonstrates that he was not relying on the grids in determining whether Ms. Medina was disabled.  Further, his decision reflects that he relied on the vocational expert testimony, and not on the grids, to come to that conclusion.  See Tr. at 19.

**Fifth Alleged Error**

39.  Plaintiff contends that the ALJ did not properly evaluate Ms. Medina's mental impairment.  Plaintiff argues that the ALJ overlooked substantial evidence that supported the necessary level of severity for a finding of disability, although she does not specifically argue that the impairment constitutes a listed impairment.

40.  Several mental assessments of Plaintiff, including psychiatric review technique forms ("PRT"), were completed at different times.  The categories for Part B for the listed impairment of affective disorders are: daily living; social functioning; deficiencies of concentration, persistence or pace; deterioration or decompensation in work settings.  20 C.F.R. Pt. 404 Subpt. P, App.1, §

12.04. A claimant must be functioning at a "marked" deficiency in at least two of these categories in order to be found disabled under the listed impairment.

41. None of the mental assessments completed by medical consultants contained a category in which Plaintiff's level of functioning was evaluated as "marked." Tr. at 124, dated 8/95; 293, dated 5/5/97; 308 (review of 6/26/97 PRT). As Defendant points out, the evidence in the record does not support a "marked" finding in any two of these categories. The ALJ noted that Dr. Gonzalez opined that Plaintiff was unable to work, but that this view was "opposed" by other medical consultants who had opined the impairment was not severe. Tr. at 16.

42. Although she did not participate in some activities she used to, Plaintiff still visited friends in town, Tr. at 41, and had started living with a boyfriend twice a week, Tr. 33, 47. Thus, Ms. Medina's ability to function in the first two areas under Part B was not seriously impaired. Similarly, her level of functioning in the other areas was also not markedly deficient, as reflected in the assessments done by several medical consultants: Plaintiff stopped working as a maid because the work hurt her back, and she stopped working as a painter because her employer was laying off a surplus of employees. There was, as the ALJ noted, no indication or suggestion that Plaintiff was not able to function in a work-like setting.

43. The ALJ was not bound to accept Dr. Gonzalez' opinion, since the Commissioner, and not the treating physician, is responsible for examining medical source opinions and making the determination on whether a claimant meets statutory definition of disability. See 20 C.F.R. § 404.1527(e)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine claimant is disabled). The ALJ rejected Dr. Gonzales' opinion because it was unsupported by or inconsistent with other objective evidence of

record, and he was entitled to do so. See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994).

44. Given Plaintiff's actual activity level and the assessments of other medical consultants, the ALJ was justified by the evidence in finding that Ms. Medina's depression was a function of her inability to deal with her teenage children, e.g., Tr. at 253, 257, 258, 332, 414, rather than a condition that severely limited her ability to work.

45. Thus, I find that the ALJ properly evaluated Plaintiff's mental impairment.

**Sixth Alleged Error**

46. Plaintiff alleges that the ALJ's step five finding that Plaintiff could perform other work in the national economy was not based on substantial evidence. The hypothetical posed to the VE in this case assumed that Plaintiff has a residual functional capacity of light work. On remand, it may be that a proper inquiry will end with the ALJ finding that Plaintiff cannot do light work, even with a sit/stand option. Therefore, because I am recommending that the case be remanded for a proper inquiry into Plaintiff's RFC, it would be premature to make findings on this issue.

47. In sum, I find that (1) the ALJ did not impermissibly deny reopening Plaintiff's case; (2) the ALJ did not inappropriately used the grids to determine that Plaintiff was not disabled; (3) the credibility determination was based on substantial evidence; and (4) the ALJ properly evaluated Ms. Medina's mental impairment. I find, however, that (5) the hypothetical posed to the vocational expert was not based on substantial evidence as it included a residual functional capacity that was not based on substantial evidence and that (6) it is premature to determine

whether or not the ALJ's step five finding that Plaintiff could perform other work in the national economy was based on substantial evidence.

## Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 5]** be GRANTED IN PART in that this cause be remanded to the Commissioner in order to conduct a proper inquiry into Plaintiff's residual functional capacity, obtaining a medical consult if necessary, and then conducting a step five inquiry, including, if necessary, the opinion of a vocational expert. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE